# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

EDWARD LEE BOWN,

      Plaintiff,  :  Case No. 3:07-cv-375

  -vs-  :  Magistrate Judge Michael R. Merz

SHERIFF DAVE VORE, et al.,

      Defendants.

## DECISION AND ORDER ON SUMMARY JUDGMENT MOTIONS

This case is before the Court on the Motions for Summary Judgment of Defendants Vore, Derscham, "J.T.," Campbell, Bone, Vest, Benson, and Connors (Doc. No. 49) and Defendants Head Medic and Head Nurse (Doc. No. 50). Plaintiff opposes both Motions in a consolidated Memorandum (Doc No. 52) and the Defendants have filed Reply Memoranda in support (Doc. Nos. 56, 61).

The parties have unanimously consented to plenary magistrate judge jurisdiction and the case has been referred on that basis (Doc. No. 23). The Magistrate Judge is therefore authorized to decide the instant Motions.

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. On

a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970). Nevertheless, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed. R. Civ. P. 50). *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). If, after sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate. *Id*. The opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby,* 477 U.S. at 249-50, 106 S. Ct. at 2510-11 (citations omitted). "The mere possibility of a factual dispute is not enough." *Mitchell v. Toledo Hosp*., 964 F. 2d 577, 582 (6th Cir. 1992)(quoting *Gregg v. Allen-Bradley Co.,* 801 F. 2d 859, 863 (6th Cir. 1986). Therefore a court must make a preliminary assessment of the evidence, in order to decide whether the plaintiff's

evidence concerns a material issue and is more than de minimis. *Hartsel v. Keys*, 87 F. 3d 795 (6th Cir. 1996). "On summary judgment," moreover, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962). Thus, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 249, 106 S. Ct. at 2510.

The moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex,* 477 U.S. at 323; *see also, Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (citation omitted). If the moving party meets this burden, the nonmoving party must go beyond the pleadings to show that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 587; *Martin v. Ohio Turnpike Comm'n*., 968 F. 2d 606, (6th Cir. 1992), *cert. denied*, 506 U.S. 1054, 113 S. Ct. 979, 122 L.Ed.2d 133 (1993).

In ruling on a motion for summary judgment (in other words, determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Interroyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the verified pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

Trial judges may not use summary judgment motions as occasions to weigh the evidence, unless the evidence opposing the motion is so insubstantial that it would not support a jury verdict.

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. *Adickes [v. S. H. Kress & Co.]*, 398 U.S. [144] at 158-59, 90 S. Ct. 1598, 29 L. Ed. 2d 142 [(1970)].

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *see also Russo v. City of Cincinnati*, 953 F.2d 1036, 1041-42 (6th Cir. 1992). However, a district court need not view the facts in the light most favorable to the nonmoving party if that party's version of the events is "blatantly contradicted by the record, so that no reasonable jury could believe it. *Scott v. Harris,* 550 U.S. 372, 380 (2007). See also *Marvin v. City of Taylor*, 509 F.3d 234 (6th Cir. 2007).

**Procedural History**

Plaintiff brought this action *pro se* on October 9, 2007 (Complaint, Doc. No. 3). Of the original Defendants, Montgomery County Common Pleas Judge Dennis Langer and Probation Officers James Dare and Laura Keneipp were dismissed involuntarily, over Plaintiff's objection. (Doc. Nos. 4, 5, 6, 7, 9.) Counsel entered an appearance for Plaintiff in June, 2008, and Defendant Scott was later dismissed voluntarily (Doc. No. 41). The instant Motions are made on behalf of all remaining Defendants in the case.

Although Plaintiff is now represented by counsel, the operative pleading is his original *pro se* Complaint which has not been amended (Complaint, Doc. No. 3)Defendant Vore is said to be the Sheriff of Montgomery County. *Id*. at ¶ 4. Derscham and Campbell are said to be Deputy Sheriffs and supervisors at the Montgomery County Jail. *Id*. at ¶ 7. "J.T." is said to be the recreation

supervisor. *Id*. at ¶ 8. Bone, Vest, Benson, and Connors are said to be correctional officers and Deputy Sheriffs. *Id*. at ¶ 9. Plaintiff expressly pleads that he is suing Defendants Vore, Derscham, Campbell, J.T., Bone, Vest, Benson, and Connors in their individual capacities. (These Defendant are referred to herein collectively as the "Montgomery County Defendants.)

On the other hand, Defendants John and Jane Doe, the Head Medic and Head Nurse (collectively, the NaphCare Defendants"), whose identities were not known to Plaintiff when he filed, are said to be sued in both their individual and official capacities. (Complaint, Doc. No. 3, ¶ 10.) The Plaintiff has never sought to identify in pleadings these John and Jane Doe Defendants or substitute real persons for these pseudonymous persons.

The Complaint purports to state claims for relief against all Defendants under the Eighth and Fourteenth Amendments for denial of medical care (Complaint, Doc. No. 3, Preliminary Statement and ¶ 1.) In his Memorandum in Opposition, Plaintiff clarifies that his claim is made under 42 U.S.C. § 1983 for violation of his Eighth Amendment right to be free from a deliberately indifferent response to a serious medical need (Doc. No. 52 at 2). This Court therefore has subject matter jurisdiction over the case under 28 U.S.C. §§ 1331 and 1343.[1]

**Evidence Presented on the Motions**

Fed. R. Civ. P. 56(c) permits the Court to consider on summary judgment "the pleadings, the discovery and disclosure materials on file, and any affidavits. . ." Affidavits must be made on personal knowledge, set out facts which would be admissible in evidence, and demonstrate the affiant's competence to testify on the matters stated. Fed. R. Civ. P. 56(e)(1). There are no

---

[1] In the Complaint, Plaintiff asserts the Court has jurisdiction over state law claims under 28 U.S.C. § 1367. However, no state law claims are pled.

5

depositions or other discovery materials of record.

The Montgomery County Defendants support their Motion with Affidavits of Glen McIntosh, Hartfield Turner (sued as "J.T."), Brian Dershem, Kelley Campbell, Justin Bone, Jeff Vest, Rosco Benson, Thomas Conner, and David Conner.

The McIntosh Affidavit avers that he was Jail Administrator at all times relevant to this case (McIntosh affidavit, Doc. No. 49-2, at ¶ 3.) He attaches a copy of the relevant contract between the Montgomery County Board of County Commissioners and NaphCare, establishing NaphCare as the independent contractor entity providing medical services at the Montgomery County Jail during the relevant period. As custodian of the Sheriff's Office record, McIntosh avers that the Sheriff collects as required by Ohio law and maintains in computerized form the following information: name, address, date of birth, sex, race, social security number, marital status, physical description, emergency contacts, arrest information, nature of criminal charges, housing and visitor information, property and money inventory, release information, criminal background, medical screening, and "any incidents that occur while an inmate is in the jail. . . ." *Id*. at ¶ 8. All such records were provided to Plaintiff's counsel in this case. *Id*. at ¶ 9.

According to the jail records, Mr. Bown was booked into the Jail on October 11, 2006, and released on November 21, 2006, being housed throughout that time in cell S42. *Id*. at ¶ 10. He did not receive recreation on November 9, 2006, and did not make any medical requests on that date. *Id*. He did make a medical request, according to the records, on November 16, 2006, and was seen by a NaphCare employee on November 17, 2006. Inmate requests or letters regarding medical care and addressed to Sheriff Vore would have been forward to Major McIntosh and then referred to NaphCare. *Id*. at ¶ 13.

The Turner Affidavit (Doc. No. 49-3) avers he was the recreation Officer at the Montgomery County Jail at all relevant times. ¶¶ 3-4. The inmates of S42 did not receive recreation on November

9, 2006, but did receive recreation on November 16, 2006. *Id*. at ¶¶ 5 & 9. No inmate was injured at recreation on November 9, 2006, and on November 16, 2006, no inmate celled in S42 reported an injury to him. *Id*. at 8, 10. When an injury occurs which prevents an inmate from walking, medics are called at once and such an injured inmate would not be helped back to his cell by other inmates. *Id*. at 6,7. Plaintiff never requested medical attention from Turner on November 9 or 16, 2006. *Id*. at ¶ 14. If Mr. Bown had at any time requested medical attention from Turner, he would have followed the Jail policy by having Plaintiff fill out a medical request form and forwarded that to NaphCare. *Id*. at ¶ 15.

The Dershem Affidavit (Doc. No. 49-4) avers that he was a Lieutenant in the Sheriff's Office on November 9, 2006, but had no reason to be on the fourth floor of the Jail, where S42 is located, on November 9, 2006. *Id*. at ¶ 7. Some time after November 16, 2006, Mr. Bown requested medical care for his knee from Dershem who, not being a medical professional, referred the request to the fourth floor corrections officer and NaphCare. *Id*. at ¶¶10-12.

The Campbell Affidavit (Doc. No. 49-5) avers that he was a sergeant in the Sheriff's Office on November 9, 2006, and assigned to the Jail. *Id*. at ¶ 3. He avers that he had no contact with Plaintiff at any time between November 9, 2006, and Plaintiff's release on November 21, 2006, nor did Plaintiff ever request medical assistance from him during that period. *Id*. at ¶¶ 6-7.

The Bone Affidavit (Doc. No. 49-6) avers that he is a corrections officer at the Jail but did not work at the Jail on November 9, 2006. *Id*. at 6. While he did work the third watch on the fourth floor on November 13 and 20, 2006, he does not recall any inmates complaining of injuries or requesting medical attention on those days. *Id*. at ¶¶ 7-8.

The Vest Affidavit (Doc. No. 49-7) avers that he is a corrections officer at the Jail but did not work at the Jail on November 9, 2006. *Id*. at ¶ 6. While he did work the second watch on the fourth floor on November 15, 16, and 21, 2006, he does not recall any inmates complaining of

7

injuries or requesting medical attention on those dates. *Id*. at ¶¶ 7-8.

The Benson Affidavit (Doc. No. 49-8) avers that he was a corrections officer at the Jail working second watch during the relevant time period, but did not work on November 9, 2006. *Id*. at ¶ 5. While he did work on November 14, 2006, he recalls no contact with Plaintiff on that date. *Id*. at ¶¶ 6-7.

Plaintiff sued a Corrections Officer "Connors." (Complaint, ¶ 9.) No such person worked at the Montgomery County Jail during the relevant time period. (McIntosh Affidavit, ¶ 12.) However, Corrections Officers Thomas and David Conner have both provided affidavits. The Thomas Conner Affidavit (Doc. No. 49-9) avers he worked in the receiving area on November 9, 2006, and had no contact with Plaintiff. *Id*. at ¶ 5. While he did work on the fourth floor on November 19, 2006, he recalls no contact with or request for medical attention from Plaintiff on that date. *Id*. at ¶¶ 6-7. David Conner avers (Doc. No. 49-10) that he worked the third floor on November 9, 2006, and had no contact with Plaintiff. *Id*. at ¶ 5. He did work the fourth floor on November 15, 2006, but recalls no contact with or request for medical attention from Plaintiff on that date. *Id*. at ¶¶ 6-7.

Defendants John and Jane Doe support their Motion for Summary Judgment with the Affidavit of James See which avers that he is the Health Services Administrator of the Montgomery County Jail and the custodian of medical records for inmates (Doc. No. 50-2, ¶¶ 2-3.) Exhibit 1 (filed under seal as Doc. No. 62) are Mr. Bown's medical records, generated and kept in the ordinary course of business of the Montgomery County Jail[2]. *Id*. at ¶¶ 5-6.

Plaintiff opposes the Motions for Summary Judgment with his own affidavit (Doc. No. 52-2) in which he avers:

---

[2]The records are filed under seal to protect Plaintiff's privacy interests under the Health Insurance Portability and Accountability Act ("HIPAA").

8

1. He was incarcerated at the Montgomery County Jail from October 11, 2006, to November 21, 2006 and housed in the S42 pod on the fourth floor, a dormitory room housing 30-40 inmates. *Id*. at ¶ 2.

2. He received no handbook when booked into the Jail and was never informed of any specialized medical request form. *Id*. at ¶¶ 3-4.

3. While playing basketball during recreation on November 9, 2006, he suffered an injury when another inmate, Jody Allen, fell on him, crushing his kneecap and breaking his right tibia. *Id*. at ¶ 5.

4. When the injury happened, the game was stopped by J.T. Plaintiff had to be helped back to his cell by Allen. *Id*. at ¶ 7. Although he asked Turner to send him to the medical department, Turner told him to report the injury to the corrections officer when he got back to S42. *Id*.

5. He asked for Defendant Bone for medical attention "right away." Instead of providing that attention, Bone gave him a Health Services Request Form, which he had never seen before. *Id*. at ¶ 8. He filled out the form, saying he could not walk, and requested to see a doctor as soon as possible. *Id*. at ¶ 9.

6. Over the course of the next week, having heard nothing, he repeatedly requested assistance from the jail nurse[3] and Defendant Dershem. The nurse told him to fill out a Health Services Request form. *Id*. at ¶ 10.

7. "After several days" he asked Corrections Officers on duty, including Defendants Bone, Vest, Benson, and "Thomas Connors" for help or for more forms, which they refused. *Id*. at ¶ 11.

---

[3]This person is not named and it is not apparent from the Affidavit whether Mr. Bown is speaking of one person or several persons who filled that role. He does not identify this nurse as the Jane Doe whom he has sued.

8. In lieu of the Health Service Request forms, Mr. Bown began sending Inmate Request Forms "to anyone I could think of" including Defendants Vore, Derscham, Campbell, Scott, Keneipp, and Judge Langer. *Id*. at ¶ 12.

9. At some unspecified point in time, Mr. Bown avers he attempted to file a grievance, but Defendants "Bone, Vest, Benson, and Connors weree [sic] among those who refused to allow me to file a grievance." *Id*. at ¶ 13.

10. Plaintiff avers he was seen by a nurse from NaphCare on November 16, 2006, who said she thought his leg was broken and would refer him to a doctor. *Id*. at ¶ 14. However, on November 19, 2006, he was seen not by a doctor, but by Mr. See who threatened to put him in isolation if he filed more grievances. *Id*. at ¶ 16.

11. Plaintiff was released from the Montgomery County Jail to the custody of Butler County authorities on November 21, 2006. *Id*. at 17. The Butler County authorities, recognizing his injury, took him to Fort Hamilton Hospital, where he was treated and released on November 2,2 2006. *Id*. at ¶ 18.

12. Because Plaintiff missed an appointment with Defendant Keneipp on November 27, 2006, a warrant was issued for his arrest which was executed on December 1, 2006. *Id*. at ¶¶ 19-20.

13. When Mr. Bown returned to the Montgomery County Jail, they took his crutches away, prescribed nothing but Motrin for a week, and refused to transport him to an appointment with Dr. Jacobus. *Id*. at ¶ 21.

14. On December 21, 2006, Plaintiff was seen by Dr. DiCicco who assumed his care and who, after testing, performed surgery on January 24, 2007. *Id*. at ¶ 22. Although the Jail then gave him a wheelchair, they refused to transport him to physical therapy more than once a week. *Id*. at ¶ 23.

In addition to his own Affidavit, Plaintiff purports to rely on jail documents provided by the Montgomery County Defendants and "the medical records obtained from Joseph D. DiCiccio, D.O., Orthopedic Associates of Southwestern Ohio, filed separately under seal." (Memorandum, Doc. No. 52, at 1.) While the referenced jail records are attached to the Memorandum, the Court finds no place where the medical records have been filed and Plaintiff offers no record reference.

Confronted with Plaintiff's response, the NaphCare Defendants filed a supplemental affidavit of Mr. See which denies that See ever threatened Bown with isolation or ever asked him to stop filling out forms. (Doc. No. 56-3.) The Montgomery County Defendants filed a supplemental affidavit of Glen McIntosh which attaches a document in which Plaintiff acknowledged receipt of the Jail rules and indicated he understood how to obtain medical treatment (Doc. No. 61-2 at ¶ 7.) Additional attached documents show that Plaintiff had requested medical treatment on the required form on October 14, 2006; that the S42 inmates did not go to recreation on November 9, 2006; that Defendants Bone, Vest, and Benson did not work on November 9, 2006; and that David Conner did not work on the fourth floor that day. *Id*. at ¶¶ 8-10.

**Analysis**

42 U.S.C. §1983, R.S. §1979, was adopted as part of the Act of April 20, 1871, and reads, as amended:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress , except that in any action brought against a judicial officer, injunctive relief

shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

The statute creates a cause of action sounding essentially in tort on behalf of any person deprived of a constitutional right by someone acting under color of state law. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 709 (1999); *Memphis Community School District v. Stachura,* 477 U.S. 299 (1986); *Carey v. Piphus,* 435 U.S. 247(1978). The purpose of §1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. *Wyatt v. Cole*, 504 U.S. 158 (1992). In order to be granted relief, a plaintiff must establish that the defendant deprived him of a right secured by the U.S. Constitution and the laws of the United States and that the deprivation occurred under color of state law. *See West v. Atkins,* 487 U.S. 42, 48 (1988); *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Flagg Brothers Inc. v. Brooks*, 436 U.S. 149, 155 (1978).

**Exhaustion of Administrative Remedies**

Because Plaintiff was incarcerated at the time he filed this action, it is governed by the Prison Litigation Reform Act of 1995 Title VIII of P.L. 104-134, 110 Stat. 1321(effective April 26, 1996)(the "PLRA")[4]. In those cases to which the PLRA applies, a prisoner plaintiff must both allege and show that he has exhausted all available state administrative remedies. Unless the prisoner plaintiff shows that the requirements of the PLRA have been complied with, the district court is required to dismiss the case without prejudice pending completion of administrative

---

[4]As required by the PLRA, Plaintiff was assessed an initial partial filing fee upon filing and ordered to pay the full filing fee in installments (Order, Doc. No. 2). No payment has ever been made on that obligation.

12

remedies or a showing by the prisoner plaintiff that they have already been completed. *Brown v. Toombs*, 139 F.3d 1102 (6th Cir. 1998). The exhaustion requirement applies to both generalized grievances and specific incidents. *Porter v. Nussle*, 534 U.S. 516 (2002). The exhaustion requirement is not jurisdictional. *Wyatt v. Leonard*, 193 F.3d 876 (6th Cir.,1999). However, it is mandatory and must be addressed by the district court in all prisoner civil rights cases before the merits are addressed. *Brown v. Toombs,* 139 F.3d 1102, 1104 (6th Cir. 1998). The prisoner bears the burden of proving exhaustion, either by attaching documentation of the relevant administrative decisions or by detailing the process followed and the outcome of the complaint. *Knuckles El v. Toombs,* 215 F.3d 640, 641 (6th Cir. 2000).

The record establishes that Plaintiff did not exhaust his administrative remedies. In his affidavit opposing summary judgment, he claims that is because corrections officers refused to give him the required form (Bown Affidavit, attached to Doc. No. 52, at ¶ 13.). However, he claims that he made up *ad hoc* grievance forms and attempted to give them to both jail administration and NaphCare personnel. *Id*. The record shows that Plaintiff's counsel was furnished under Fed. R. Civ. P. 26(a)(1) with two discs of documents, containing not less than 286 pages, from the Montgomery County Jail records of Mr. Bown's confinement, but does not attach to his Affidavit any document purporting to be an *ad hoc* or other grievance form[5].

When he filed suit in the first instance, Mr. Bown made no claim that he had been refused grievance forms. Instead, he interpreted the questions on the Prisoner Complaint form as pertaining to London Correctional Institution where he was then confined and said that he had not filed because

---

[5]Mr. Bown also claims that he never received an inmate handbook, but he offers no explanation of why his signature appears on a receipt for the handbook when he was booked in, if he never received it. Again, his testimony is contradicted by the documented records.

his grievance was not against the institution where he was confined[6]. That deficiency in pleading has not been corrected.

Mr. Bown has not proven that he exhausted administrative remedies. His claim that he filed *ad hoc* grievance forms is completely belied by the absence of documents in the record[7].

**Plaintiff's Eighth Amendment Claim**

A prisoner claiming that the conditions of his confinement violate the Eighth Amendment must show deliberate indifference by prison officials. In *Wilson v. Seiter,* 501 U.S. 294, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991), the Supreme Court applied the *Estelle v. Gamble* 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed.2d 251 (1976), standard to all prison conditions cases. *Wilson* explains that there is an objective component to the inquiry (was the deprivation sufficiently serious?) and a subjective component (did the officials act with a sufficiently culpable state of mind?). *Farmer v. Brennan*, 511 U.S. 825 (1994). Deliberate indifference is equivalent to criminal recklessness.

Plaintiff claims that he was seriously injured in a basketball game during recreation period on November 9, 2006. There is no doubt that at some point he received in some way an injury to his knee, one which required major surgery on January 24, 2007. However, his claim to have been injured on November 9, 2006, is completely contradicted by the documentation. J.T., the recreation supervisor, and Glen McIntosh, the Jail Supervisor at the time, testify from records that those persons confined in S42[8] where Mr. Bown was housed were not taken to recreation that day.

---

[6]The Court agrees that it is a fair reading of the form complaint that it calls for grievances against the institution where a prisoner is presently confined.

[7]Conversely, if the documents in question are in the jail records furnished to Plaintiff's counsel, they have not been filed with the Court or, if they are on file, Plaintiff's counsel has not referred the Court to a place in the file where they can be found.

[8]Mr. Bown admits he was housed in S42.

14

Furthermore, individual Defendant Deputies and Corrections Officers who Mr. Bown claims saw him in his seriously injured condition on November 9, 2006, show from documented work records that they would not have had any contact with Mr. Bown on that day. Indeed, Defendants Bone, Vest, and Benson did not work at the Jail on that day; Mr. Bown's counsel has had access to these records and does not challenge their accuracy. Finally, in speaking to NaphCare personnel on November 17, 2006, about his injury, he told them that it occurred "yesterday," a statement also reflected in the records. Mr. Bown has listed as trial witnesses four fellow inmates, including the person who he says fell on him and caused his injury (Doc. No. 47), but no affidavit has been presented from any of those witnesses as to anything. Thus their testimony is not available to contradict the record that no injury could have occurred on November 9, 2006.

There is obviously a time element to deliberate indifference such that failing to provide Mr. Bown with medical attention for the eight days between November 9 and November 17 would have to be evaluated quite differently from what the records indicate happened: Mr. Bown was first seen by NaphCare personnel on November 17, 2006, the day after he was injured, according to what he told the NaphCare personnel. He presents no evidence that his condition on November 16, 2006, was so obviously serious that it should have been seen immediately as opposed to the next day.

When Plaintiff was seen on November 17, 2006, he claims his condition was sufficiently severe that the attending nurse thought his leg was broken and scheduled him to see a physician (Bown Affidavit, ¶ 14). He claims he was not seen by anyone for three days (November 20, 2006) and then was threatened by the Health Services Administrator[9] with solitary confinement unless he stopped complaining about medical treatment. *Id*. at 16.

The parties at least agree that Plaintiff was released from Montgomery County custody the

---

[9]Mr. Bown filed suit against John Doe Head Medic and Jane Do Head Nurse, but the pleadings have never been amended to name the actual individuals intended to be sued, that is, to substitute real names for pseudonyms.

next day, November 21, 2006. Upon his release, he was transferred to Butler County custody on an outstanding warrant. Instead of booking him in, the Butler County officials transported him to the Fort Hamilton Hospital where he was treated and released after one day, both from the hospital and from custody. *Id*. at ¶ 18. Mr. Bown then failed to appear for an appointment with his probation officer on November 27, 2006. *Id*. at 19. She had a warrant issued for his arrest which was executed on December 1, 2006. *Id*. at ¶ 19. Thereupon, Plaintiff says, "they" resumed their deliberate indifference by taking away his crutches, forcing him to walk on the injured knee, refusing to transport him to a December 3, 2006, appointment with Dr. Jacobus who had seen him at Fort Hamilton Hospital, and providing only prescription-strength Motrin for his pain. *Id*. at 21.

Plaintiff's care was assumed by Dr. Joseph DiCicco, D.O., on December 21, 2006, who removed the meniscus cartilage in his right knee on January 24, 2007. *Id*. at ¶ 22. After surgery he was returned to the Montgomery County Jail, where he was given a wheelchair, but refused transportation to physical therapy by the "Jail Administrator." *Id*. at ¶¶ 22-23. He was sentenced to a year in prison on March 31, 2007, but received no treatment while in prison. *Id*. at 24.

An inmate claiming deliberate indifference to a serious medical need must first show that his medical need was objectively serious. Plaintiff, however, presents no competent evidence from anyone but himself about the seriousness of his claimed injury. He has been treated by doctors who are not Defendants in the case, some of whom have been listed as witnesses, but none of whom so far as the record shows has prepared an expert report to state that the condition of Mr. Bown's knee and leg when they observed it was such that a layperson observing it would have known that it was a serious condition on November 9, November 17, December 1, 2006, or otherwise. When the Butler County authorities transported Mr. Bown to Fort Hamilton Hospital on November 21, 2006, he was not kept in the hospital for treatment, but was treated and released. He does not testify that during the time he was at liberty between November 21, 2006, and December 1, 2006, he sought any

16

medical treatment. While Mr. Bown was in jail from December 1-21, 2006, was he prescribed treatment which the Jail or NaphCare refused to provide? No evidence is presented on this point, although Dr. Jacobus is named as a witness. After Dr. DiCiccio assumed his care on December 21, 2006, he did not order immediate surgery. If he gave any particular orders for treatment which were ignored by the Jail or NaphCare, there is no evidence from him to that effect, nor even from Mr. Bown himself.

As to Sergeant Campbell and Sheriff Vore, Plaintiff does not claim any personal contact with them, but merely that he completed grievance forms addressed to them. The testimony from Major McIntosh is that any such forms, regardless of who they were addressed to, would have come to him and been forwarded to NaphCare. A supervisory employee cannot be held liable under §1983 for the constitutional torts of those he supervises unless it is shown "that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Searcy v. City of Dayton*, 38 F.3d 282 (6th Cir. 1994), quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). ". . . there must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a . . . plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate. *Phillips v. Roane County*, 534 F.3d 531 (6th Cir. 2008); *Shehee v. Luttrell,* 199 F. 3d 295, 300 (6th Cir. 1999); *Alioto v. City of Shively*, 835 F.2d 1173 (6th Cir. 1987). A superior is not liable unless he is "somehow personally at fault by actively participating in, encouraging or directing the commission of illegal acts by his subordinates. *Coffy v. Multi-County Narcotics Bureau*, 600 F.2d 570 (6th Cir. 1979); *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 61 (1978); *Jones v. Denton*, 527 F. Supp. 106 (S.D. Ohio 1981). For example, *respondeat superior* liability is not available in a medical treatment case as to warden and director of department of corrections. *Jones v. Denton*, 527 F. Supp. 106

(S.D. Ohio 1981). A claimed constitutional violation must be based upon active unconstitutional behavior. The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Gregory v. Louisvillew,* 444 F.3d 725, 751 (6th Cir. 2006); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). There is no evidence either Sergeant Campbell or Sheriff Vore ever received Mr. Bown's complaints or had any personal contact with him, nor is there evidence either of them encouraged any of the behavior of their subordinates of which Mr. Bown complains.

Defendant Hartfield Turner shows by his own Affidavit, corroborated by the voluminous jail records attached to Major McIntosh's Affidavit, that he did not have contact – could not have had contact – with Mr. Bown on November 9, 2006.

The remaining Montgomery County Defendants do admit to contact with Plaintiff, although they prove by the same records as Mr. Turner that no such contact happened on November 9, 2006. Aside from the detail Mr. Bown gives as to November 9, 2006, his allegations against these Defendants are very vague as to time. Each Defendant denies that Mr. Bown ever asked for medical assistance on any of the days they had contact with him. Each of these Defendants testifies that it is his practice, as required by Jail policy, to tell inmates who seek medical assistance to complete a medical assistance request form. To respond in that way to a request for assistance would not manifest reckless indifference to an inmate's serious medical need. Thus the Court is faced with a very vague scatter-shot set of allegations by Plaintiff, met by detailed, records-based denials by Defendants. Given that state of the evidence, Plaintiff has not shown there is any genuine issue of material fact as to his claims against the remaining Montgomery County Defendants (Dershem, Bone, Vest, Benson and Conner).

The NaphCare Defendants remain unidentified despite the Court's having provided as much time for discovery as was requested. In his Affidavit, Plaintiff does not even make any allegations against the John Doe Head Medic. The only nurse mentioned in Mr. Bown's affidavit is the one

who told him that she thought his leg was broekn on November 17, 2006. Is she the "Jane Doe Head Nurse" sued here?

Finally, Plaintiff purports to sue the John and Jane Doe Defendants in their "official" capacities. Judgment against a public servant in his official capacity imposes liability on the public entity he represents. *Brandon v. Holt*, 469 U.S. 464 (1985); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). But John and Jane Doe are not alleged to be public servants. Rather, the evidence is that they (whoever they are) are employees of NaphCare, an independent contractor, and a private entity. NaphCare itself has not been sued in this case.

Plaintiff's proffered evidence on the Motions for Summary Judgment is insufficient to raise a genuine issue of material fact as to any remaining Defendant in the case. Accordingly, both Motions for Summary Judgment are granted.

The Clerk is directed to enter judgment dismissing the Complaint with prejudice with respect to all Defendants named in the Complaint, both those moving for summary judgment, and Defendants Judge Langer, Mr. Dare, Ms. Keniepp, and Attorney Scott.

July 30, 2009.

                  s/ **Michael R. Merz**
                  United States Magistrate Judge